IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

              Plaintiff,

      vs.                                          Civ. No. 1:25-cv-00588

448 BANDOLIER, ALAMOGORDO, NEW
MEXICO, 88310,
and
728 CENTER STREET, RUIDOSO, NEW
MEXICO, 88345,

              Defendants-*in-rem*.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, brings this complaint in accordance with

Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims

and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action *in rem* to forfeit and condemn to the use and benefit of the

United States of America property involved in violations of 18 U.S.C. §§ 1014, 1343, and 1957

that is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

### DEFENDANTS *IN REM*

2.      The defendants *in rem* consist of the following real properties, with improvements

thereon and appurtenances thereto:

      a.    448 Bandolier, Alamogordo, NM 88310, more particularly described as: Lot 5,
          North Park, Unit 6, Alamogordo, Otero County, New Mexico;

      b.    728 Center Street, Ruidoso, NM 88345, more particularly described as: Lot 17,
          Block 3, of Woodland Hills Subdivision, Ruidoso, Lincoln County, New Mexico,
          as shown by the plat thereof filed in the office of the County Clerk and Ex-officio
          Recorder of Lincoln County, March 27, 1967, in Tube No. 265. Being further

shown by the Boundary Survey Plat and Location of Improvements, filed April 17, 2018, Book C-K, Page 252

(hereinafter referred to as "Defendant Real Property").

3.    The Defendant Real Property is now, and during the pendency of this action will be, in the jurisdiction of this Court.

4.    The United States will post notice of the complaint on the property as required by 18 U.S.C. § 985(c)(1)(B).  Posting of notice on the Defendant Real Property establishes *in rem* jurisdiction over the property.  The United States will also serve notice of the complaint, along with a copy of the complaint, on the property owner(s) pursuant to 18 U.S.C. § 985(c)(1)(C) or 18 U.S.C. § 985(c)(2).

## JURISDICTION AND VENUE

5.    The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a), and 1356.

6.    Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district.

## BACKGROUND ON PAYCHECK PROTECTION PROGRAM (PPP) LOANS

7.    In March 2020, the Coronavirus Aid, Relief and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families and organizations affected by the COVID-19 emergency.  Among its various provisions, the CARES Act authorized the Small Business Administration (SBA) to guarantee Paycheck Protection Program (PPP) loans, the full principal amount of which could qualify for forgiveness.

8.      Borrowers were required to use PPP loan proceeds for enumerated purposes, including payroll costs,[1] rent and utilities, and mortgage interest payments.  Knowing misuse of PPP funds subjected the borrower to additional liability, such as charges for fraud or false statements.

9.      Under the PPP, the maximum loan amount is the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act.  The payroll-based formula principally considers the borrower's aggregate payroll costs from the preceding twelve months for all domestic employees.  Once an average monthly payroll cost is established, the borrower multiplies that amount by 2.5 to arrive at the total maximum PPP loan amount.

10.      To apply for a PPP loan, potential borrowers could electronically submit the Small Business Administration (SBA) Form 2483, "Paycheck Protection Program Borrower Application Form" with supporting payroll documentation to an SBA-approved lender that administered the loan and serves as custodian of the funds.  On the SBA Form 2483, an authorized representative had to make several certifications about the business operations and related information.  Those certifications include that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

---

[1] Payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.

Upon submitting the SBA Form 2483, the authorized representative had to certify that, should he knowingly use the PPP funds for unauthorized purposes, the United States could hold him legally liable, including by charging him criminally for fraud.

11.    Additionally, the applicant had to submit supporting documents to establish loan eligibility for the PPP and to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents. The supporting documents could include tax filings with the Internal Revenue Service (IRS), such as the IRS Form W-3, "Transmittal of Wage and Tax Statements"; IRS Form 940, "Employer's Annual Federal Unemployment Tax Return"; and IRS Form 941, "Employer's Quarterly Federal Tax Return," as well as payroll processor records, bank records, or other records sufficient to demonstrate the qualifying payroll amount.

12.    Finally, the applicant had to certify his understanding of the following warning regarding false statements and other criminal penalties:

> I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/ or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

13.    PPP loan applications were processed by participating SBA-approved lenders. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies and the loan was guaranteed by the SBA.

14.    Once a participating lender funded a PPP loan to a borrower, the lender submitted disbursement details to the SBA E-Tran system through servers located in Sterling, Virginia.  The SBA's Denver Finance Center, located in Denver, Colorado, then created payment files and authorized payments of PPP processing fees to the participating lender through the U.S.

4

Treasury's Financial Management System (FMS).  The primary server for the FMS is located in Sterling, Virginia.  The payment files that were created in Denver, Colorado, were transmitted via wire to the U.S. Treasury disbursing office in Kansas City, Missouri, which then sent instructions for the payment of funds to the Federal Reserve Bank ACH processing site in East Rutherford, New Jersey.

PANDEMIC ECONOMIC INJURY DISASTER LOAN (EIDL) BACKGROUND

15.    The Economic Injury Disaster Loan (EIDL) program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

16.    On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, Congress passed the CARES Act, which the President signed into law on March 27, 2020. The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.  The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.  The amount of any advance was determined by the number of employees on the borrower's payroll.  The advances did not have to be repaid.

17.    To obtain an EIDL and advance, a qualifying business had to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for COVID-19 relief, the 12-month period was typically considered to be the year preceding January 31, 2020.  The

applicant also had to certify that all of the information in the application was true and correct and agree in the required Loan Authorization and Agreement that the EIDL funds would be used solely as working capital for authorized categories of expenditure, including payroll expenses, sick leave, production costs, debts, rent, and mortgage payments, to alleviate the economic injury caused by the disaster.

18.     EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above.  Any funds issued under an EIDL or advance are issued directly by the SBA.  EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

19.     Applications for EIDLs made available under the CARES Act were received by the SBA using cloud-based platforms.  Servers used in support of the cloud-based platform were located in West Des Moines, Iowa; Boydton, Virginia; and Quincy, Washington.

20.     Once an SBA EIDL application was approved, the SBA's Denver Finance Center, located in Denver Colorado, created payment files and authorized payments of the EIDL funds based on the applications.  The disbursement of the EIDL funds occurred via the FMS to the U.S. Treasury and then to the recipient's bank account.  As indicated above, the primary server for the FMS is in Sterling, Virginia.

FACTS

A. **Relevant Individuals and Entities**

21.     During the relevant time period from 2019 through 2021, Scott A. Spiro (SPIRO) was an individual residing in the District of New Mexico.

22.     On or about March 28, 2019, SPIRO opened a Navy Federal Credit Union (NFCU) checking account ending in 2036 (x2036) and savings account ending in 7980 (x7980) in the name of Scott A. Spiro. SPIRO was the sole authorized signatory on these accounts.

23.     On or about April 26, 2020, SPIRO opened a NFCU checking account ending in 8760 (x8760) and savings account ending in 0444 (x0444) in the name of the business entity Scott A. Spiro JD LLC. SPIRO was listed as having 100% ownership of Scott A. Spiro JD LLC and was the sole authorized signatory on these accounts.

24.     Scott A. Spiro JD LLC, a business entity, was organized in New Mexico on or about May 6, 2020, and was assigned EIN 85-0836891 by the IRS on April 27, 2020. The listed business purpose for Scott A. Spiro JD LLC was accounting and forensic legal audit examinations. The listed mailing address and principal place of business for Scott A. Spiro JD LLC was 448 Bandolier, Alamogordo, New Mexico. The registered agent was Scott A. Spiro. The IRS does not have any tax return information for Scott A. Spiro JD LLC, EIN 85-0836891, for tax years 2017 – 2022. The New Mexico Taxation and Revenue Department has no records associated with Scott A. Spiro JD, EIN 85-0836891, from January 1, 2017, through November 28, 2022.  The New Mexico Department of Workforce Solutions has no record of money paid to employees under EIN 85-0836891.

25.     Pacifica Law Clinic, LLC, a business entity, was organized in New Mexico on or about May 13, 2020, and was assigned EIN 85-1041881 by the IRS on May 14, 2020. The listed business purpose for Pacifica Law Clinic, LLC, was providing professional services in the

performance of forensic and legal audits for compliance, tax, and acquisition valuation. The listed mailing address and principal place of business for Pacifica Law Clinic, LLC, was 448 Bandolier, Alamogordo, New Mexico. The registered agent was Scott A. Spiro. The IRS does not have any tax return information for Pacifica Law Clinic, LLC, EIN 85-1041881, for tax years 2017 – 2022. The New Mexico Taxation and Revenue Department has no records associated with Pacifica Law Clinic, LLC, EIN 85-1041881, from January 1, 2017, through November 28, 2022. The New Mexico Department of Workforce Solutions has no record of money paid to employees under EIN 85-1041881.

26.     Spiro Enterprises of NM, LLC, a business entity, was organized in New Mexico on or about June 11, 2020, and was assigned EIN 85-1390860 by the IRS on June 11, 2020. The listed business purpose for Spiro Enterprises of NM, LLC, was business and accounting services. The listed mailing address and principal place of business for Spiro Enterprises of NM, LLC, was 448 Bandolier, Alamogordo, New Mexico. The registered agent was Scott A. Spiro. The IRS does not have any tax return information for Spiro Enterprises of NM, LLC, EIN 85-1390860, for tax years 2017 – 2022. The New Mexico Taxation and Revenue Department has no records associated with Spiro Enterprises of NM, LLC, EIN 85-1041881, from January 1, 2017, through November 28, 2022. The New Mexico Department of Workforce Solutions has no record of money paid to employees under EIN 85-1390860.

27.     Pacifica Funding Corporation, a business entity, was organized in Delaware on or about June 17, 1992. The charter became inoperative, but was revived on or about July 28, 2022, with Scott Spiro listed as the authorized officer.

28.     The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by

enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides for loans with government-backed guarantees to be offered through banks, credit unions, and other lenders.  The SBA also acts as a lender itself in certain loan programs.

29.     Kabbage Funding was a non-bank lender, headquartered in Georgia, approved by the SBA to provide PPP loans. Kabbage Funding also partnered with other financial institutions to fund approved PPP loans.

30.     First Home Bank was a financial institution headquartered in Florida, the accounts of which were insured by the Federal Deposit Insurance Corporation.

31.     Ready Capital was a non-bank lender, headquartered in New York, approved by the SBA to provide PPP loans. Ready Capital also partnered with other financial institutions to fund approved PPP loans.

32.      Customers Bank was a financial institution headquartered in Pennsylvania, the accounts of which are insured by the Federal Deposit Insurance Corporation.

33.     Northeast Bank was a financial institution headquartered in Maine, the accounts of which are insured by the Federal Deposit Insurance Corporation.

34.     PayPal is a non-bank lender, headquartered in California, approved by the SBA to provide PPP loans. PayPal partnered with WebBank, a financial institution headquartered in Utah, the accounts of which are insured by the Federal Deposit Insurance Corporation, to serve as the lender on PPP loans.

**B. Fraudulently Obtained PPP and EIDL Loans**

35.    SPIRO caused at least five PPP loan applications and four EIDL loan applications

to be filed with SBA-approved PPP lenders and the SBA between 2020 and 2021. The loan

applications were made in the names of various companies. These loan applications were

approved, and the loans were funded for a total of at least $679,490, with the loan proceeds being

directed to several different bank accounts at NFCU. The chart below summarizes the loans at

issue in this matter:

| Date Applied | Date Funded | Type of Loan | Business Name | Lender | Amount Received |
|---|---|---|---|---|---|
| 4/2/2020 | 6/10/2020 | EIDL Grant | Pacifica Funding Corporation dba Scott A Spiro JD | SBA | $10,000 |
| 4/2/2020 | 7/20/2020 | EIDL Loan | Scott a Spiro JD, LLC/Accounting Advisors | SBA | $127,200 |
| 4/2/2020 | 8/4/2020 | EIDL Loan | Pacifica Funding Corporation dba Scott A Spiro JD | SBA | $149,900 |
| 5/4/2020 | 5/6/2020 | EIDL Grant | Scott A Spiro JD LLC | SBA | $10,000 |
| 5/13/2020 | 5/15/2020 | PPP | Scott A Spiro JD LLC | Kabbage Inc. (Cross River Bank) | $19,702 |
| 5/23/2020 | 5/27/2020 | PPP | Pacifica Law Clinic, LLC | First Home Bank | $65,100 |
| 6/21/2020 | 6/30/2020 | PPP | Spiro Enterprises of NM, LLC | Ready Cap Lending, LLC / Customers Bank | $164,800 |
| 3/16/2021 | 5/11/2021 | PPP | Pacifica Law Clinic, LLC | WebBank / PayPal | $91,343 |
| 3/18/2021 | 3/26/2021 | PPP | Scott A Spiro JD | Northeast Bank | $41,445 |

36.    In support of the loan applications, SPIRO made certain representations and

provided certain documentation to the SBA and the SBA-approved lenders that processed the

loans.  The following paragraphs demonstrate that SPIRO obtained the EIDL and PPP loans based on false and/or fraudulent representations to the SBA and the SBA-approved lenders.

*The Pacifica Funding Corporation SBA EIDL Application*

37.    On or about April 2, 2020, SPIRO submitted a false and misleading EIDL application to the SBA in the name of Pacifica Funding Corporation dba Scott A. Spiro JD seeking a loan of $150,000.

38.    The EIDL application falsely stated, among other things, that Pacifica Funding Corporation had twelve employees and, for the for the twelve-month period prior to January 31, 2020, had gross revenues of $1,856,240.00 and costs of goods sold of $968,421.00.

39.    In support of the EIDL application, SPIRO submitted several falsified documents, including: (1) an IRS Schedule C – Profit or Loss From Business for tax year 2018 listing gross income of $289,284 and a net profit of $94,573, (2) an IRS Schedule C – Profit or Loss from Business for Scott A. Spiro JD LLC for tax year 2019 listing gross income of $389,284 and a net profit of $3,833, (3) an IRS Form 1040 U.S. Individual Income Tax Return for SPIRO for tax year 2019 listing an adjusted gross income of $697,576, and (4) documents from the New Mexico Office of the Secretary of State purporting to show that Scott A Spiro JD, LLC, business ID #6147062, was organized in New Mexico on December 14, 2015.

40.    On or about June 10, 2020, the SBA approved an advanced EIDL grant of $10,000, which was wired into SPIRO's NFCU account ending in 2036.

41.    On or about August 4, 2020, the SBA approved an EIDL loan of $149,900, which was wired into SPIRO's NFCU account ending in 2036.

*The Scott A Spiro JD, Spiro & Associates LLP SBA EIDL Application*

42.    On or about April 2, 2020, SPIRO submitted a false and misleading EIDL application to the SBA in the name of Scott A Spiro JD, Spiro & Associates LLP dba Accounting Advisors seeking a loan of $127,300.

43.    The EIDL application falsely stated, among other things, that Scott A Spiro, Spiro & Associates LLP had six employees and, for the for the twelve-month period prior to January 31, 2020, had gross revenues of $950,958.00 and costs of goods sold of $684,492.00.

44.    In support of the EIDL application, SPIRO submitted several falsified documents, including: (1) an accounting of the profit and loss for Scott A. Spiro JD in 2019, (2) a 2019 balance sheet for Scott A. Spiro JD.

45.    On or about July 16, 2020, the SBA approved an EIDL loan of $127,200, which was wired into SPIRO's NFCU account ending in 8760 on or about July 20, 2020.

*The Scott A Spiro JD LLC SBA EIDL Application*

46.    On or about May 4, 2020, SPIRO submitted a false and misleading EIDL application to the SBA in the name of Scott A. Spiro JD LLC.

47.    The EIDL application falsely stated, among other things, that Scott A. Spiro JD LLC was established on January 1, 2002, had twelve employees, and, for the for the twelve-month period prior to January 31, 2020, had gross revenues of $298,000.00 and costs of goods sold of $201,000.00.

48.    On or about May 6, 2020, the SBA approved an advanced EIDL grant of $10,000, which was wired into SPIRO's NFCU account ending in 8760.

*The Scott A Spiro JD LLC Kabbage Funding PPP Application*

49.     On or about May 13, 2020, SPIRO submitted a false and misleading PPP application to Kabbage Funding in the name of Scott A. Spiro JD LLC seeking a loan of $19,702.00.

50.     The PPP application falsely stated, among other things, that Scott A. Spiro JD, with EIN 85-0836891, was in operation on February 15, 2020, had twelve employees, had an average monthly payroll of $7,881.00, and intended to use the loan for payroll. The PPP application also falsely stated that SPIRO did not own or manage any other business.

51.     In support of the PPP application, SPIRO submitted several falsified documents, including: (1) an IRS Form W-3 for 2019 that listed wages, tips, and other compensation of $124,942.59, (2) an IRS Schedule C – Profit or Loss from Business for 2018 representing that Scott A. Spiro JD, LLC, had $289,284.00 in gross receipts or sales, and (3) documents from the New Mexico Office of the Secretary of State purporting to show that Scott A Spiro JD, LLC, business ID #6147062, was organized in New Mexico on December 14, 2015.

52.     On or about May 15, 2020, Kabbage approved the PPP loan and wired $19,702 into SPIRO's NFCU account ending in 8760 with an Automated Clearing House (ACH) deposit.

*The Pacifica Law Clinic, LLC First Home Bank PPP Application*

53.     In furtherance of the scheme, on or about May 23, 2020, SPIRO submitted a false and misleading PPP application to First Home Bank in the name of Pacifica Law Clinic, LLC seeking a loan of $65,155.00.

54.     The PPP application falsely stated, among other things, that Pacifica Law Clinic, LLC, with EIN 85-1041881, was established on May 1, 2015, was in operation on February 15, 2020, had twelve employees, had an average monthly payroll of $26,062.00, and intended to use the loan for payroll, lease or mortgage interest, utilities, or other permissible business-related

purposes.  The PPP application also falsely stated that SPIRO did not own or manage any other business.

55.    In support of the PPP application, SPIRO submitted several falsified documents, including: (1) a letter from the IRS stating that EIN 85-1041881 was assigned to Pacifica Law Clinic LLC on May 14, 2015 (2) an IRS Schedule C – Profit or Loss from Business for Pacifica Law Clinic, LLC, for tax year 2019 listing gross receipts or sales of $612,366.00 and a net profit of $200,028.00, (3) an IRS Form W-3 for 2019 that listed wages, tips, and other compensation of $212,745.48, and (4) documents from the New Mexico Office of the Secretary of State purporting to show that Pacifica Law Clinic, LLC, business ID #6151892, was organized in New Mexico on May 13, 2015.

56.    On or about May 27, 2020, First Home Bank approved the loan and wired $65,100 into SPIRO's NFCU account ending in 8760.

*The Spiro Enterprises of NM LLC Ready Capital / Customers Bank PPP Application*

57.    In furtherance of the scheme, on or about June 21, 2020, SPIRO submitted a false and misleading PPP application to Ready Capital in the name of Spiro Enterprises of NM LLC seeking a loan of $164,892.70.

58.    The PPP application falsely stated, among other things, that Spiro Enterprises of NM LLC, with EIN 85-1390860, was in operation on February 15, 2020, had eighteen employees, had an average monthly payroll of $65,957.08, and intended to use the loan for payroll.  The PPP application also falsely stated that SPIRO did not own or manage any other business.

59.    In support of the PPP application, SPIRO submitted several falsified documents, including: (1) an IRS Form 940– Employer's Annual Federal Unemployment (FUTA) Tax Return stating that Spiro Enterprises of NM, LLC, paid $899,487.00 to employees in 2019, (2)

an IRS Form 941 – Employer's Quarterly Federal Tax Return stating that Spiro Enterprises of NM, LLC had 16 employees and paid $207,946.30 in wages, tips, and other compensation during the first quarter of 2019, (3) an IRS Form 941 – Employer's Quarterly Federal Tax Return stating that Spiro Enterprises of NM, LLC had 18 employees and paid $195,083.06 in wages, tips, and other compensation during the second quarter of 2019, (4) an IRS Form 941 – Employer's Quarterly Federal Tax Return stating that Spiro Enterprises of NM, LLC had 17 employees and paid $185,696.78 in wages, tips, and other compensation during the third quarter of 2019, (5) an IRS Form 941 – Employer's Quarterly Federal Tax Return stating that Spiro Enterprises of NM, LLC had 16 employees and paid $230,608.50 in wages, tips, and other compensation during the fourth quarter of 2019, (6) an IRS Form 941 – Employer's Quarterly Federal Tax Return stating that Spiro Enterprises of NM, LLC had 16 employees and paid $207,946.30 in wages, tips, and other compensation during the first quarter of 2020,  (7) a bank statement for NFCU accounts ending in 8760 and 0444 showing a balance of $181,183.61 as of May 31, 2020, (8) an IRS Form 1040 – U.S. Individual Tax Return stating that SPIRO earned $277,677.00 in wages and had an adjusted gross income of $697,576.00 in tax year 2019, (9) an IRS Schedule C – Profit or Loss From Business for Spiro Enterprises of NM, LLC, for tax year 2019 listing gross receipts or sales of $1,282,366.00 and a net profit of $386,469.00, (10) a payroll summary of all of the purported employees of Spiro Enterprises of NM, LLC, and (11) documents from the New Mexico Office of the Secretary of State purporting to show that Spiro Enterprises of NM, LLC, business ID #6168612, was organized in New Mexico on June 1, 2002.

60.     On or about June 30, 2020, Customers Bank approved the PPP loan and wired $164,800.00 into SPIRO's NFCU account ending in 8760 via an ACH deposit.

61.     On or about August 23, 2021, SPIRO submitted a PPP loan forgiveness application seeking full forgiveness of the $164,800.00 loan.  In the application, SPIRO made a

number of false representations, including that Spiro Enterprises of NM, LLC (1) had 18 employees at the time of the initial loan application, (2) had 18 employees at the time of the loan forgiveness application, (3) had payroll costs of $418,621.46, and (3) had used the loan proceeds for business costs that were eligible for forgiveness.

62.     On or about August 27, 2021, the SBA approved full forgiveness of the $164,800.00 loan to Spiro Enterprises of NM, LLC.

*The Pacifica Law Clinic LLC PayPal - WebBank PPP Second Draw Application*

63.     Between on or about March 16, 2021, and on or about April 9, 2021, SPIRO submitted a false and misleading PPP second draw application to PayPal and WebBank in the name of Pacifica Law Clinic, LLC seeking a loan of $91,343.00.

64.     The PPP second draw application falsely stated, among other things, that Pacifica Law Clinic, LLC, with EIN 85-1041881, was established on May 1, 2015, was in operation on February 15, 2020, had eight employees, had an average monthly payroll of $28,204.17, had a gross income of $440,038.00 in tax year 2020, and intended to use the loan for payroll.  The PPP second draw application also falsely stated that SPIRO did not own or manage any other business.

65.     In support of the PPP application, SPIRO submitted several falsified documents, including: (1) a letter from the IRS stating that EIN 85-1041881 was assigned to Pacifica Law Clinic LLC on May 14, 2015, (2) a bank statement for NFCU accounts ending in 8760 and 0444 showing a balance of $84,287.92 as of February 28, 2020, (3) an IRS Form 940– Employer's Annual Federal Unemployment (FUTA) Tax Return stating that Pacifica Law Clinic LLC paid $339,244.00 to employees in 2020, (4) an IRS Form 941 – Employer's Quarterly Federal Tax Return stating that Pacifica Law Clinic LLC had eight employees and paid $84,811.26 in wages, tips, and other compensation during the fourth quarter of 2020, (5) an IRS Schedule C – Profit or

Loss from Business for Pacifica Law Clinic, LLC, for tax year 2019 listing gross receipts or sales of $612,366.00 and a net profit of $200,028.00, (6) an IRS Schedule C – Profit or Loss from Business for Pacifica Law Clinic, LLC, for tax year 2020 listing gross receipts or sales of $440,903.00 and a net profit of $10,222.00, and (7) a spreadsheet of accounts receivable for Pacifica Law Clinic, LLC, for February 1, 2019 – February 23, 2021.

66.    On or about May 11, 2021, PayPal and WebBank approved the loan and wired $91,343.00 into SPIRO's NFCU account ending in 8760.

67.    On or about November 12, 2021, SPIRO submitted a PPP loan forgiveness application seeking full forgiveness of the $91,343.00 loan.  In the application, SPIRO made a number of false representations, including that Pacifica Law Clinic LLC (1) had eight employees at the time of the initial loan application, (2) twelve employees at the time of the loan forgiveness application, and (3) had complied with all the requirements of the PPP rules.

68.    On or about November 18, 2021, the SBA approved full forgiveness of the $91,343.00 loan to Pacifica Law Clinic, LLC.

*The Scott A Spiro JD LLC Northeast Bank PPP Second Draw Application*

69.    On or about March 22, 2021, SPIRO submitted a false and misleading PPP second draw application to Northeast Bank in the name of Scott A. Spiro JD seeking a loan of $41,445.00.

70.    The PPP application falsely stated, among other things, that Scott A. Spiro JD, with EIN 85-0836891, was established on December 14, 2015, was in operation on February 15, 2020, had twelve employees, had an average monthly payroll of $16,578.00, and intended to use the loan for payroll. The PPP application also falsely stated that SPIRO did not own or manage any other business.

71.    In support of the PPP application, SPIRO submitted several falsified documents,

including: (1) a letter from the IRS stating that EIN 85-0836891 was assigned to Scott A Spiro JD, LLC on December 27, 2015, (2) documents from the New Mexico Office of the Secretary of State purporting to show that Scott A Spiro JD, LLC, business ID #6147062, was organized in New Mexico on December 14, 2015, (3) an IRS Schedule C – Profit or Loss from Business for 2019 representing that Scott A. Spiro JD had $389,284.00 in gross receipts or sales, (4) an IRS Schedule C – Profit or Loss from Business for 2020 representing that Scott A. Spiro JD, LLC, had $215,228.00 in gross receipts or sales, (5) an IRS Form W-3 for 2020 that listed wages, tips, and other compensation of $198,946.42, (6) an IRS Form 941 – Employer's Quarterly Federal Tax Return stating that Scott A. Spiro JD LLC had twelve employees and paid $49,736.50 in wages, tips, and other compensation during the fourth quarter of 2020, (7) a bank statement for NFCU accounts ending in 8760 and 0444 showing a balance of $67,274.74 as of February 28, 2020, (8) invoices for services provided by Scott A. Spiro JD, LLC, and (9) a spreadsheet of accounts receivable for Scott A. Spiro JD, LLC, for February 1, 2019 – February 23, 2021.

72.     On or about March 26, 2021, Northeast Bank approved the PPP loan and wired $41,445.00 into SPIRO's NFCU account ending in 8760 with an ACH deposit.

**C.  Use of Fraudulently Obtained PPP and EIDL Funds to Purchase the Defendant Real Property**

73.     As described more specifically above, the fraudulent PPP and EIDL monies were initially deposited into two NFCU bank accounts held solely by SPIRO, Scott A Spiro J.D., LLC account x8760 (checking) / x0444 (savings) and Scott A Spiro account x2036. SPIRO made multiple money transfers between these accounts, as well as between Scott A Spiro J.D., LLC account X0444 and Scott A Spiro account X7980.

*$45,000 Wire to Alamogordo Title Company and Trust – Bandolier*

74.    On July 15, 2020, SPIRO submitted an offer to purchase the residence located at 448 Bandolier, Alamogordo, NM 88310, for $209,900.00. The cash required to close on the purchase was $45,152.12. On July 28, 2020, SPIRO wired $45,000 from NFCU x0444 to Alamogordo Title Company and Trust for closing funds on the purchase of 448 Bandolier, Alamogordo, NM 88310.

75.    NFCU bank records reveal that nearly all the money in x0444 was from fraudulently obtained loans.  As of April 30, 2020, the account ending in x8760 had $1,000.00 and the account ending in x0444 had $5.00. In May 2020, account x8760 received $94,805.15 in deposits, comprised mostly of the following fraudulent loans: a $10,000 EIDL grant, $19,702 PPP loan, and a $65,100 PPP loan. In June 2020, account x8760 received $164,803.51 in deposits, again comprised nearly entirely by a fraudulent $164,800 PPP loan. In July 2020, account x8760 received $127,210.02 in deposits, again comprised nearly entirely by a fraudulent $127,200 loan. As of July 1, 2020, account x0444 had a balance of $5.17.  SPIRO then transferred over $114,000 from x8760 into x0444. It is from these transferred, fraudulently obtained funds that Spiro wired the $45,000 to Alamogordo Title Company on July 28, 2020.

*$69,800 / $137,100 / $137,100 Cashier's Checks to Land Titles of Ruidoso – Center Street*

76.    On July 20, 2020, SPIRO submitted an offer to purchase a residence located at 728 Center Street, Ruidoso, NM 88345 for $344,000. On July 21, 2020, SPIRO wired $69,900 from NFCU x8760 to x0444. On August 14, 2020, SPIRO withdrew $69,800 in cash from NFCU x0444 and obtained a cashier's check made payable to Land Titles of Ruidoso, LLC. On September 1, 2020, Spiro withdrew $137,100 cash from NFCU x8760 and another $137,100 from NFCU x2036 and obtained a cashier's checks made payable to Land Titles of Ruidoso, LLC. The funds were used for the purchase of 728 Center Street, Ruidoso, NM 88345.

19

77.     NFCU bank records reveal that nearly all the money used to pay for the Cedar Street property was from fraudulently obtained loans.  With respect to the money sourced from the accounts ending in x8760 and x0444, as of April 30, 2020, the account ending in x8760 had $1,000.00 and the account ending in x0444 had $5.00. In May 2020, account x8760 received $94,805.15 in deposits, comprised mostly of the following fraudulent loans: a $10,000 EIDL grant, $19,702 PPP loan, and $65,100 PPP loan. In June 2020, account x8760 received $164,803.51 in deposits, again comprised nearly entirely by a fraudulent $164,800 PPP loan.  In July 2020, account x8760 received $127,210.02 in deposits, again comprised nearly entirely by a fraudulent $127,200 PPP loan.  As of July 1, 2020, account x0444 had a balance of $5.17 and account x8760 had a balance of $244,981.95.  SPIRO then transferred over $114,000 from x8760 into x0444. It is from these fraudulently obtained funds that SPIRO sourced the $68,900 payment and one of the $137,100 payments to Land Titles of Ruidoso, LLC for the Center Street property.

78.     With respect to the $137,100 paid from account x2036, this money derived from the fraudulent $149,900 EIDL loan that Spiro obtained on August 4, 2020, for Pacifica Funding dba Spiro JD. Account x2036 had a balance of $4,735.38 prior to the deposit of the EIDL loan.

### FIRST CLAIM FOR RELIEF

79.     The United States incorporates by reference the allegations in paragraphs 1 through 79 as though fully set forth.

80.     Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture property involved in a transaction or attempted transactions in violation of 18 U.S.C. § 1957 or property traceable to such property.

81.     The Defendant Real Property was involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957 or is traceable to such transactions and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

20

## SECOND CLAIM FOR RELIEF

82.    The United States incorporates by reference the allegations in paragraphs 1 through 82 as though fully set forth.

83.    Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1014 or any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)).

84.    18 U.S.C. § 1956(c)(7)(A) includes as a "specified unlawful activity" "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31."  Section 1961(1) specifically lists "section 1343 (relating to wire fraud)."

85.    The Defendant Real Property constitutes or is derived from proceeds traceable to an offense under 18 U.S.C. §§ 1014 and 1343 and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE: Plaintiff seeks arrest of Defendant Real Property and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Property, costs, and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

RYAN ELLISON
United States Attorney

STEPHEN R. KOTZ & HOLLAND KASTRIN
Assistant U.S. Attorneys
201 Third St., NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Internal Revenue Service – Criminal Investigation who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Dated: 06/23/2025

Matthew J. Sanchez, Special Agent
Internal Revenue Service – Criminal Investigation